IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLEN KELLY, :
:
    Plaintiff, : CIVIL NO. 4:CV-08-2027
:
v. : (Judge McClure)
:
YORK COUNTY PRISON, *et al.*, :
:
    Defendants. :

# **MEMORANDUM**

January 14, 2009

Allen Kelly ("Plaintiff" or "Kelly"), an inmate confined at the York County Prison ("YCP") in York, Pennsylvania, initiated this *pro se* civil rights action by filing a Complaint pursuant to the provisions of 42 U.S.C. § 1983. He also has filed a Motion for leave to proceed *in forma pauperis*. (Record document no. 5.)

Based on the request to proceed *in forma pauperis*, the case is before the Court for preliminary screening pursuant to 28 U.S.C. § 1915. For the reasons set forth below, the Court will dismiss Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

**Standard of Review**

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a federal court must dismiss a case filed *in forma pauperis* if the court determines that the complaint "fails to state a claim on

which relief may be granted." The applicable standard of review for the failure to state a claim provision is the same as the standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). Under that standard, a court must accept the truth of a plaintiff's factual allegations. *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). In addition, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, — , 127 S. Ct. 1955, 1974 (2007).

**Discussion**

Kelly claims that he was denied access to the courts, he received inadequate medical care, he was not able to make photocopies, he was passed over for work release, and he was unjustly placed in the Behavioral Adjustment Unit ("BAU").[1]

---

[1] Named as Defendants are the YCP; Warden Mary Sabol; Deputy Warden Clair Doll; Deputy Warden Michael Buono; Deputy Warden John Steiner; Beata Erni, Grievance Coordinator; Jen Rogers, Counselor; Prime Care, the medical care company for YCP; Jennifer Miosi, Medical Director; Daryl Malpass, Director of Outmate Release Program; and Erin Boyd, Counselor and member of the Job Classification Committee. (Record document 1-2 at 4-7.)

Kelly also names the following "Additional Parties": Lawrence Hartman, YCP Captain; Stephen A. Bolding, YCP Correctional Officer; G. Clark, YCP Correctional Officer C.E.R.T.; F. Salido, YCP Correctional Officer C.E.R.T.; Walter Everhart, YCP Correctional Officer; and Charles E. Weaver, YCP Correctional Officer. (*Id.* at 2-3.) Kelly does not make any allegations against these "additional parties."

(continued...)

### 1.     Access to the Courts Claims

Kelly alleges that he was denied access to the law library during his first twenty-nine (29) days at YCP while he was held in pre-class.  (Record document 1-2, ¶ 13c.)  He claims that "he did not have the ability to do legal research on his own in support of his DUI case" and that this case "is currently still active in the court."  (*Id.*, ¶ 13 c, d.)

Kelly's second access to the courts claim is that his complaint for custody of his eight (8)- year old daughter was dismissed because Defendant Rogers caused him to miss a conciliation.  (*Id.*, ¶¶ 39-46.)  He states that, on or about September 2, 2008, he received a court order scheduling the conciliation on September 11, 2008.  (*Id.*, ¶ 39.)  On September 7, 2008, he used a request form to notify his counselor, Defendant Rogers, that the conciliation had been scheduled.  (*Id.,* ¶ 40.)  On September 8, 2008, Rogers responded by requesting that Kelly send her a copy of the court order.  (*Id.*, ¶ 41.)  On that same date, Kelly responded to Rogers that he was not willing to allow his only copy of the court order out of his possession and requested that she either call him to her office to review it or come to his housing area to review it.  (*Id.*, ¶ 42.)  He also stated that he would hold Rogers accountable if he missed the conciliation.  (*Id.*, ¶

---

[1](...continued)

43.) Rogers then responded that she could not take action without the court order and suggested that he ask one of the correctional officers to take the order to her office when they bring her the "count sheet." (*Id.,* ¶ 44.) Plaintiff alleges that "as a result of defendant Rogers ignorance and deliberate indifference" he was unable to attend the conference. (*Id.*, ¶ 45.) He states that he received a court order on September 26, 2008 dismissing his complaint for custody of his daughter. (*Id.*, ¶ 46.)  Prison inmates have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. In *Lewis v. Casey*, 518 U.S. 343 (1996), the Court clarified that "[t]he tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." 518 U.S. at 355.

In order to maintain an access to the courts claim, an inmate must demonstrate that a non-frivolous legal claim was frustrated or was being impeded. *Id.* at 351. The inmate also must allege an "actual injury" to his litigation efforts. *Id.* at 349; *see also O'Connell v. Williams*, 241 Fed. Appx. 55, 57 (3d Cir. 2007). In other

words, "an inmate cannot establish a relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351.

With regard to Kelly's claim that he did not have the ability to perform legal research on his DUI case during his twenty-nine (29) days in pre-class, he fails to allege that an "actual injury" occurred as a result of the his lack of access to the law library. For example, he does not state that he was subject to an adverse ruling because of the alleged delay in accessing legal research materials. Accordingly, he fails to state an access to the courts claim.

As to Kelly's claim that Defendant Rogers caused his custody complaint to be dismissed, he alleges that he suffered an adverse ruling in that his child custody complaint was dismissed, but he fails to link the dismissal of his case to any conduct by Rogers that impeded his ability to litigate his case. He admits that Rogers offered to review the court order scheduling the conciliation in order to contact the court about it, but he does not state that he accepted her offer to send the order to her through the corrections officers in his unit. Moreover, he does not state that Rogers or any other prison employee restricted his ability to write a letter to the court explaining that he currently is incarcerated and requesting either a continuation of his custody conciliation until his release or an order directing the YCP Warden to produce him for

the conciliation.  Therefore, Kelly's second access to the courts claim also fails.

### 2. Inadequate Medical Care Claims

In order to establish an Eighth Amendment claim against a defendant for inadequate medical care under § 1983, a plaintiff must show "(I) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention.  *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Kelly makes two claims that he received inadequate medical care.  First, he alleges that he was approved for "Veterans medical health benefits," but that the YCP medical staff canceled his medical appointments at the Veterans Medical Center ("VMC").  (*Id.*, ¶¶ 14-29.)  He alleges that Defendant Buono rejected his offer to

6

review correspondence scheduling two appointments and instead referred him to the grievance procedure at the YCP.  (*Id.*, ¶¶ 22-23.)  Kelly further claims that Defendant Miosi informed him that Defendant Buono had been advised by an individual at the Department of Veterans Affairs ("VA") that, while Kelly would not lose his medical benefits as a result of his incarceration, the VA does not provide medical care to incarcerated veterans.  (*Id.*, ¶¶ 24-26.)  Kelly alleges that Miosi then denied him medical care from the VMC.  (*Id.*, ¶ 26.)  He explains that he intended to request alcohol and drug assessment and to receive recommendations in support of a defense for his DUI case at his appointments at the VMC.  (*Id.*, ¶¶ 28-29.)

Kelly's second claim regarding medical care is that he was denied adequate medical care for a decayed tooth.  (*Id.*, ¶¶ 62-67.)  Kelly admits that he was examined by a dental nurse and dentist at YCP for "intermittent throbbing pain in decayed tooth, with a hole in it."  (*Id.*, ¶ 62-63, 66.)  However, he claims that, because he was not able to be examined by VA dental doctors, he may need to have his tooth pulled if it becomes worse because the YCP dentist explained that he is only under contract to abstract teeth rather than repair them.  (*Id.,* ¶¶ 64-66.)

Kelly fails to allege that Defendants Buono and Miosi were deliberately indifferent to a serious medical need.  He does not claim that he requested an alcohol

7

and drug assessment and that they ignored his requests. Rather, his claim is that he wanted to receive medical care from the VA even though he was informed that the VA does not provide medical care to prisoners. As to his claim regarding his decayed tooth, he admits that he was seen by both a nurse and doctor for his tooth and received medical attention for it. (*See* Doc. 1-2, ¶¶ 63, 66-67.) Both of Kelly's claims boil down to disagreement with the medical treatment he received. Where an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). A mere difference of opinion between the inmate and the prison's medical staff regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See McFadden v. Lehman*, 968 F. Supp. 1001, 1004 n.6 (M.D. Pa. 1997); *Young v. Quinlan*, 960 F.2d 351, 358 n.18 (3d Cir. 1992). The key question is whether the defendant has provided the plaintiff with *some* type of treatment, regardless of whether it is what the plaintiff desires. *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). In the instant case, Kelly does not claim that he sought a drug and alcohol assessment at the YCP and was denied, and he admits that he received medical care for his decayed tooth, but disagreed with the care he received. Accordingly, he has not stated any claims of

deliberate indifference to a serious medical need.

### 3.     Photocopies

Kelly alleges that Defendant Buono denied him the opportunity to make photocopies of his legal documents.  (*Id.*, ¶¶ 30-38.)  However, he admits that YCP policy provides that copies of legal documents cost 25 cents per copy and that Defendant Doll responded to his request for copies of his legal documents by noting that, between June 11, 2008 and August 12, 2008, Kelly depleted the $107.25 balance in his prison account by purchasing $100.00 worth of items from the commissary and spending $4.32 on photocopies.[2]  (*Id.*, ¶¶ 32, 38.)

Prisoners have no right to free photocopying for use in lawsuits.  *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991) ("denial of free photocopying does not amount to a denial of access to the courts"); *Harrell v. Keohand*, 621 F.2d 1059, 1061 (10th Cir. 1980); *Jenkins v. Porfiro*, Civil Action No. 3:CV-95-2048, slip op. at 1 (M.D. Pa. May 15, 1996) (Vanaskie, J.)  In other words, prison officials are not constitutionally required to provide Kelly with free photocopies, and thus in alleging

---

[2]Kelly previously raised these same claims in an action filed with this Court on September 30, 2008 at Civil No. 4:CV-08-1813.  The complaint in that action was dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) on October 15, 2008.  *See Kelly v. York County Prison, et al.,* Civil No. 4:CV-08-1813, Doc. 9.  Kelly's appeal from the dismissal of that action currently is pending.  *See id.*, Doc. 12.

that Defendant Buono denied him free photocopies, he fails to state a claim on which relief may be granted.

### 4. Prison Employment and Work Release

Plaintiff alleges that he submitted an application for employment at YCP and that, "based on information and belief," he was passed over for work on two occasions. (*Id.*, ¶¶ 47-50.) Plaintiff also alleges that Defendant Malpass either denied or ignored his requests for assistance to secure outside employment in order to participate in the Outmate Work Release Program. (*Id.*, ¶¶ 53, 54.) He also claims that Malpass sabotaged his efforts to obtain employment in 1996 and 1997.[3] (*Id.*, ¶¶ 54-56.)

"A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Coakley v. Murphy*, 884 F.2d 1218, 1220 (9th Cir. 1989). A protected liberty interest may be created either by the Due Process Clause itself or by state law. *Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999).

Prisoners have no Fourteenth Amendment liberty or property interest in prison

---

[3]Even if Kelly were able to state a claim on which relief may be granted as to Defendant Malpass's actions in 1996 and 1997, it appears that this claim would be barred by the applicable statute of limitations. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003) (claims brought under 42 U.S.C. § 1983 are subject to state statutes of limitations governing personal injury actions). In Pennsylvania, the applicable statute of limitations is two years. *Id.* (citing 42 Pa. Cons. Stat. § 5524(7)).

employment, participation in a work release program, or a particular prison wage. *See Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975) (inmate's expectation of keeping a particular job is not a property or liberty interest entitled to protection under due process clause); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996) (prisoner has no liberty interest in remaining in a work-release program); *Coakley*, 884 F.2d at 1221 (no property interest in continuing in work-release program under Fourteenth Amendment); *McGoue v. Janecka*, 211 F. Supp. 2d 627, 630-31 (E.D. Pa. 2002) (same).  Therefore, Plaintiff's allegations that he was passed over for prison employment and not provided with assistance to secure outside employment to participate in a work release program fail to state a claim on which relief may be granted .

### 5.     **Placement in the BAU**

Plaintiff claims that he was falsely accused of various offenses and unjustly placed in the BAU.  (*Id.*, ¶¶ 69-70.)  He alleges that unnecessary force was used in the process of handcuffing him to place him in the BAU.  (*Id.*, ¶ 69.)  He does not make this claim against any particular Defendant. The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."  In order to

determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists, and if so, the next step is to define what process is mandated to protect it. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Prison conditions do not impact a protected liberty interest unless the prison's action impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Id.* at 486. "The determination of what is 'atypical and significant' is based upon the range of conditions an inmate would reasonably expect to encounter." *McKeithan v. Jones*, 212 Fed. Appx. 129, 130 (3d Cir. 2007) (citing *Asquith*, 186 F.3d at 412; *Griffin v. Vaughn*, 112 F.3d 703, 706 n.2 (3d Cir. 1997)). Finally, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." *Griffin*, 112 F.3d at 709.

In this case, Kelly does not state how long he was in the BAU and fails to allege that he was subjected to atypical conditions during his stay there. In *Young v. Beard*, 227 Fed. Appx. 138 (3d Cir. 2007), the Third Circuit Court of Appeals held that, where an inmate failed to allege that he was subjected to atypical conditions during his

12

930 day sentence to disciplinary confinement, he failed to show a deprivation of a cognizable liberty interest under *Sandin*. Therefore, in this case, where Kelly does not allege that he was subjected to atypical conditions in the BAU, he has failed to state a claim upon which relief may be granted.[4]

**Conclusion**

Because Kelly's complaint fails to state a claim on which relief may be granted, it will be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane*, 213 F.3d at 116-17. "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). In this case, no amendment could cure the defects in Plaintiff's claims, and thus, dismissal will be with prejudice. An appropriate Order will enter.

---

[4]To the extent Kelly was attempting to assert an excessive use of force claim through his allegation that "unnecessary force was used" in placing him in the BAU, the mere use of the phrase "unnecessary force" is insufficient to state a claim.

                                                    s/ James F. McClure, Jr.  
                                                    JAMES F. McCLURE, JR.  
                                                    United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLEN KELLY,                                    :
                                                :
    Plaintiff,                              :   CIVIL NO. 4:CV-08-2027
                                                :
v.                                              :   (Judge McClure)
                                                :
YORK COUNTY PRISON, *et al.*,                   :
                                                :
    Defendants.                             :

## **ORDER**

January 14, 2009

In accordance with the accompanying Memorandum, **IT IS HEREBY**

**ORDERED THAT:**

    1.    Plaintiff's Motion for leave to proceed *in forma pauperis* (Record

        document no. 5) is construed as a motion to proceed without full

>  prepayment of fees and costs, and the Motion is **GRANTED**.[5]

2. Plaintiff's Complaint is **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

3. The Clerk of Court shall **CLOSE** this case.

>  s/ James F. McClure, Jr.
>  JAMES F. McCLURE, JR.
>  United States District Judge

---

[5]Dismissal of this action does not relieve Plaintiff of the obligation to pay the full filing fee. Until the filing fee is paid in full, the Administrative Order issued is binding on the Warden of the York County Prison, as well as the Superintendent of any correctional facility to which Plaintiff is transferred.